# IN THE SUPREME COURT OF IOWA

No. 12–1002

Filed June 7, 2013

**CITY OF POSTVILLE, IOWA** and **JASON MEYER,**

Appellants,

vs.

**UPPER EXPLORERLAND REGIONAL PLANNING COMMISSION, MARTIN BRENNAN, KATHY CAMPBELL, RAY WHALEN, LEON GRIEBENOW, ANDREW WENTHE, KARLA ORGANIST, WARREN STEFFEN, MICHAEL KENEDY, JANET McGOVERN, DEAN DARLING, LES ASKELSON,** and **RANDY UHL,**

Appellees.

---

Appeal from the Iowa District Court for Allamakee County, Thomas A. Bitter, Judge.

A city and a citizen appeal from the district court's grant of summary judgment involving Iowa's Open Meetings Act. **DISTRICT COURT DECISION AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS.**

Anne E.H. Loomis of Allen, Vernon & Hoskins, PLC, Marion, and Charles R. Kelly Jr. of Charles Kelly Law Office, PC, Postville, for appellants.

Thomas D. Wolle of Simmons Perrine Moyer Bergman PLC, Cedar Rapids, and Carlton G. Salmons of Gaudineer, Comito & George, LLP, West Des Moines, for appellees.

**WIGGINS, Justice.**

This matter involves a claim against a local governmental body and its members for violating the Iowa Open Meetings Act (IOMA). The three issues involved in this appeal are (1) whether a volunteer of a governmental body is immune under Iowa Code section 28H.4 (2011) for damages due to alleged IOMA violations; (2) whether the governmental body's meeting notices met the requirements of section 21.4(1); and (3) whether a certain publication is a newspaper of general circulation, as required by section 28E.6(3)(*a*). The local governmental body and its members moved for summary judgment. The district court found no genuine issue of material fact existed as to each issue. Thus, the district court found the volunteers had immunity, the meeting notices satisfied the requirements of section 21.4(1), and the newspaper used for publication is a newspaper of general circulation pursuant to section 28E.6(3)(*a*). Accordingly, the district court dismissed the action. On appeal, we affirm the district court's grant of summary judgment on the immunity issue as to damages a court can assess against the individual members. We reverse the district court's grant of summary judgment on the reasonableness of the notice because a genuine issue of material fact exists regarding whether the notice given was reasonable. We also affirm the district court's grant of summary judgment because no genuine issue of material fact exists as to whether the publication is a newspaper of general circulation, as defined by section 28E.6(3)(*a*). Finally, we find any established violation of IOMA may require the court to void any action taken under IOMA if the requirements of section 21.6(3)(*c*) are proved.

## I. Background Facts and Proceedings.

**A. Facts.** The Upper Explorerland Regional Planning Commission is a body exercising public and essential government functions. Iowa Code §§ 28H.1, .3. The Commission is organized under Iowa Code chapters 28E and 28H. The Commission serves five counties: Allamakee, Clayton, Fayette, Howard, and Winneshiek. *Id.* § 28H.1. Prior to the acts at issue, the Commission had only one office located in Postville.

There are twenty-four commission members. None receive compensation from the Commission or the county that appointed them for attending the Commission's meetings. However, three commission members have salaries for full-time government positions, which require them to serve on the Commission. Several other members receive reimbursement for mileage.

In March 2009, the Commission appointed a team to study the feasibility and cost of either expanding the Postville office or locating alternative office space in any of the five counties served by the Commission. The Commission met on August 19, 2010, at the Postville office to discuss the expansion plan. The Commission unanimously authorized individuals to engage in contract negotiations for the purchase of prospective properties, including one in Decorah. The Commission retained authority to approve the proposed contract.

On September 23, the Commission held another meeting. Sixteen members attended. The meeting's agenda included approving a contract to purchase property in either Decorah or Postville. After lengthy discussion, the proper motion was made to approve a proposed purchase contract for the Decorah property. None of the attending members contested a secret ballot vote and unanimously agreed to such a vote. The members cast their ballots and then publicly counted the votes. The

motion to purchase the Decorah property carried with ten votes in favor and six opposed.

It was not until after the September 23 vote that there was concern about the propriety under IOMA of the secret ballot vote. The Commission does not dispute that immediately after the meeting one of the commission members told another member before leaving that there was a problem with the ballot vote. The same night, this concern was relayed to the Commission's executive director.

The following Monday after the vote, all commission members received an email indicating concern about the legality of the secret ballot vote. After exchanging emails, several members proposed that if the voting members revealed their vote and recorded their decision in the minutes, then the Commission's action would be legally appropriate.

For guidance in resolving the issue, the Commission contacted the State Ombudsman's Office, which recommended sending new written ballots to each voting member. The Commission heeded this recommendation and instructed each voting member to reaffirm their vote and include their name on the ballot.

Of the sixteen original voting members, one abstained, another returned the ballot unmarked, and a third did not return the ballot at all. Six members changed their votes in the subsequent reaffirmation. Despite this, the outcome remained the same with ten "yes" votes in favor of purchasing the property in Decorah. The Commission distributed revised minutes of the meeting, which listed the name and vote of each member who was present for the September 23 meeting.

Other relevant facts are discussed below, as needed.

**B. Proceedings.** The City of Postville and Jason Meyer, a resident and taxpayer of Allamakee County, filed their original petition on

October 18, 2010.[1]    After various amendments, the amended petition contains fifty-one counts against the Commission, alleging various IOMA violations.

Counts one and two assert the meeting on September 23, 2010, when the vote by secret ballot occurred, and the Commission's subsequent reaffirmation of the vote by mail constituted improper closed sessions lacking reasonable meeting notices.   In counts three through thirty-nine, the City alleges that the Commission conducted improper closed sessions lacking reasonable notice for meetings from October 28, 1999, through August 19, 2010.   The City claims the notices posted by the Commission in the hallway of its offices did not constitute reasonable notice.   Counts forty through fifty detail charges that for the years 1999 through 2009, the Commission failed to comply with the annual publication requirements in section 28E.6(3).   Finally, count fifty-one alleges a particular commission meeting was not reasonably accessible to the public, as required by law, due to inadequate seating accommodations.

In its answer, the Commission and its members admitted their actions, as alleged in counts one and two, violated IOMA when the vote by secret ballot occurred and the Commission reaffirmed the vote by mail, but denied the rest of the allegations.

In its request for relief, the City sought from each individual member of the Commission $500 per IOMA violation.   The City also requested the court order either the individual members or the Commission pay its attorney fees.   Other relief sought included voiding the action taken at the closed session, enjoining the commission

---

[1]For clarity, the opinion refers to both plaintiffs as "the City."

members from further violating the law, removing the eleven named commission members from their positions, and nullifying and voiding all actions taken by the Commission at any session violating IOMA. Thus, the relief sought was against both the individual members of the Commission and the governmental body as a whole.

On April 18, the Commission moved to file an amended answer to the City's amended petition. In the amended answer, the Commission admitted that by taking a vote in writing with anonymity, the Commission violated section 21.3 because each individual defendant was required to state their vote in open session.

The Commission then moved to file a second amended answer to the City's amended petition in order to respond to the addition of count fifty-one. In the second amended answer, the Commission added new affirmative defenses, including mootness, state law immunity under section 28H.4(2), and federal law immunity under the Volunteer Protection Act of 1997 in 42 U.S.C. § 14503(a) (2006).

On November 14, the Commission filed its first motion for summary judgment. Therein, the Commission once again admitted their actions offended IOMA. Nonetheless, the Commission argued (1) the individual members of the Commission are immune from liability under the Federal Volunteer Protection Act and the state immunity provision in section 28H.4(2); (2) the Commission as an entity is not liable for IOMA violations due to the members' immunity under section 28H.4(2); and (3) counts one and two are moot because both the Commission and its individual members are immune from liability.

The City resisted the motion for summary judgment with a memorandum of law. Relevant to these proceedings, the City argued there are disputed facts involving the reasonableness of the

Commission's meeting notices and the Commission's compliance with the publication requirement in section 28E.6(3). The City did not brief the immunity issue in its memorandum of law.

The Commission filed a motion to strike the City's supplemental memorandum of law and a reply brief. In its supplemental memorandum of law, the City contended section 28H.4(2) "does not provide blanket immunity to all members of a Council of Governments, as the director and members may be personally liable for acts or omissions which involve intentional misconduct or knowing violation of the law." Moreover, the City argued the Volunteer Protection Act is inapplicable because it only immunizes tort liability, not damages for IOMA violations.

The district court dismissed counts one through fifty in the City's second amended petition.[2] The district court found there was no genuine issue of material fact that the commission members did not engage in intentional conduct or a knowing violation of the law. Therefore, the district court dismissed counts one and two as to all defendants. Moreover, the district court found the Commission complied with the applicable meeting notice and publication requirements. The district court did not rule on the immunity claim regarding the meeting notice and publication requirements. Thus, the district court dismissed counts three through thirty-nine regarding the reasonableness of the meeting notices, as well as counts forty through fifty addressing the publication requirements in section 28E.6(3)(*a*).

The City timely appealed.

---

[2]The Commission later filed a second motion for summary judgment on count fifty-one. The proceedings arising from this motion are not relevant to the matter before us because the City only appeals counts one through fifty.

## II. Standard of Review.

We review a grant of summary judgment for correction of errors at law. *Minor v. State*, 819 N.W.2d 383, 393 (Iowa 2012). The district court properly grants a party's motion for summary judgment if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Iowa R. Civ. P. 1.981(3); *Zimmer v. Vander Waal*, 780 N.W.2d 730, 732–33 (Iowa 2010). To determine whether the moving party met this burden, we examine the record in the light most favorable to the nonmoving party. *Minor*, 819 N.W.2d at 393. We afford the nonmoving party "every legitimate inference that can be reasonably deduced from the evidence." *Bank of the W. v. Kline*, 782 N.W.2d 453, 456–57 (Iowa 2010) (citation and internal quotation marks omitted). The court should not grant summary judgment "if reasonable minds can differ on how the issue should be resolved," because a fact question is generated in such instances. *Id.* at 457 (citation and internal quotation marks omitted). Therefore, "our review is limited to the determination of whether a genuine issue of material fact exists and whether the district court applied the correct law." *Id.*

We must interpret various statutes to determine the propriety of the district court's grant of summary judgment. The correction of errors at law standard also applies when an appeal raises a question of statutory interpretation. *State v. Wiederien*, 709 N.W.2d 538, 541 (Iowa 2006).

## III. Immunity.

The Commission and its members admitted in their pleadings to violating IOMA in counts one and two with respect to the September 23 meeting when the vote by secret ballot occurred and subsequently when the Commission reaffirmed the vote by mail. Thus, the first question we

must answer is whether a volunteer of a council of government is personally liable for IOMA violations pursuant to Iowa Code section 21.6(3).[3] The commission members argued they are immune from liability under the Federal Volunteer Protection Act and the state immunity provision in Iowa Code section 28H.4(2). Furthermore, the Commission asserted it is not liable as an entity for IOMA violations due to the members' immunity under section 28H.4(2).

**A. Statutory Framework.** To understand these claims, it is first necessary to set forth the relevant state law provisions. IOMA provides in pertinent part:

> 1. The remedies provided by this section against state governmental bodies shall be in addition to those provided by section 17A.19. Any aggrieved person, taxpayer to, or citizen of, the state of Iowa, or the attorney general or county attorney, may seek judicial enforcement of the requirements of this chapter. . . .
>
> . . . .
>
> 3. Upon a finding by a preponderance of the evidence that a governmental body has violated any provision of this chapter, a court:
>
> *a.* Shall assess each member of the governmental body who participated in its violation damages in the amount of not more than five hundred dollars nor less than one hundred dollars. These damages shall be paid by the court imposing it to the state of Iowa, if the body in question is a state governmental body, or to the local government involved if the body in question is a local governmental body. A member of a governmental body found to have violated this

---

[3]The City failed to raise on appeal that the three members who have salaries for full-time government positions requiring them to serve on the Commission were not volunteers under Iowa Code section 28H.4(2) (2011). Therefore, we will not reach this issue and assume for purposes of this appeal they were volunteers covered by section 28H.4(2). *See City of Asbury v. Iowa City Dev. Bd.*, 723 N.W.2d 188, 198 (Iowa 2006) (holding when a party fails to articulate a claim in its brief, the party waives the argument on the issue).

chapter shall not be assessed such damages if that member proves that the member did any of the following:

    (1) Voted against the closed session.

    (2) Had good reason to believe and in good faith believed facts which, if true, would have indicated compliance with all the requirements of this chapter.

    (3) Reasonably relied upon a decision of a court or a formal opinion of the attorney general or the attorney for the governmental body.

    *b.* Shall order the payment of all costs and reasonable attorney fees in the trial and appellate courts to any party successfully establishing a violation of this chapter. The costs and fees shall be paid by those members of the governmental body who are assessed damages under paragraph "*a*". If no such members exist because they have a lawful defense under that paragraph to the imposition of such damages, the costs and fees shall be paid to the successful party from the budget of the offending governmental body or its parent.

    *c.* Shall void any action taken in violation of this chapter, if the suit for enforcement of this chapter is brought within six months of the violation and the court finds under the facts of the particular case that the public interest in the enforcement of the policy of this chapter outweighs the public interest in sustaining the validity of the action taken in the closed session. . . .

Iowa Code § 21.6.

Generally, Iowa law makes members of governmental bodies subject to liability for IOMA violations. *See Barrett v. Lode*, 603 N.W.2d 766, 768 (Iowa 1999) (recognizing only a member of a governmental body's board, council, commission, or other governing body of a political subdivision or tax-supported district is subject to IOMA). It is undisputed the individuals serving on the Commission qualify as members of a governmental body and thus, are subject to IOMA. *Id.*; Iowa Code § 21.2(1).

However, Iowa Code section 28H.4(2) rebuffs this imposition of personal liability by broadly immunizing citizens who volunteer to serve on councils of governments. Section 28H.4(2) provides in relevant part:

> A director, officer, employee, member, trustee, or volunteer is not personally liable for a claim based upon an act or omission of the person performed in the discharge of the person's duties, except for acts or omissions which involve intentional misconduct or knowing violation of the law, or for a transaction for which the person derives an improper personal benefit.

Thus, a volunteer is not personally liable, unless (1) the person's actions involve intentional misconduct or a knowing violation of the law or (2) the person derived improper personal benefit from the act or omission. Accordingly, this is a broad immunity provision applying to any act or omission of any volunteer serving on any council of government.

**B. Analysis.** In the district court, the City admits the members of the Commission are immune unless their actions or omissions involved "intentional misconduct" or a "knowing violation" of IOMA. It argued in the district court that a genuine issue of material fact existed as to whether there was intentional misconduct or a knowing violation of IOMA. The district court found no genuine issue of material fact existed as to these issues. We agree.

"Intentional misconduct" requires more than a reckless disregard for the law. *See Woodruff Constr. Co. v. Mains*, 406 N.W.2d 787, 790 (Iowa 1987) (distinguishing between reckless disregard and intentional misconduct in tort law). A "knowing violation" requires a deliberate or conscious act. *See Black's Law Dictionary* 950 (9th ed. 2009) (defining "knowing" as "[d]eliberate; conscious").

On our review of the record, we find no evidence to show the actions of the members of the Commission amounted to intentional

misconduct or a knowing violation of IOMA. Instead, the record shows the members did not identify an issue with the secret ballot vote until after its completion. Upon identifying the problem, the commission members self-policed their actions, engaged in repeated conversations amongst themselves regarding the issue and potential corrective measures, contacted state authorities at the ombudsman's office for advice, and then undertook the recommended remedial action in a timely manner with the reaffirmation vote and distribution of minutes including the names of the members and their respective voting decision. Such actions demonstrate a desire to comply with the requirements of IOMA, not sidestep the statute. Therefore, we find there is no genuine issue of material fact as to any intentional misconduct or a knowing violation of IOMA by the members of the Commission. We need not discuss whether there is immunity afforded under federal law because we conclude the individual members are immune under state law.

On appeal, the City makes an additional argument that the immunity provided by section 28H.4(2) does not apply to liability created by volunteers violating IOMA. The City did not make this argument in the district court. We do not decide issues presented to us on appeal that a party did not present to the district court. *DeVoss v. State*, 648 N.W.2d 56, 60 (Iowa 2002). Thus, we will not reach the issue whether section 28H.4(2) applies to liability created by volunteers violating IOMA and leave it for another day. Accordingly, we affirm the district court's grant of summary judgment on the immunity issue because we find section 28H.4(2) exempts volunteers serving on councils of governments from personal liability under this record. Accordingly, the district court

was correct to dismiss counts one and two of the petition on the immunity issue as to the individual members' liability for damages.[4]

## IV. Posting of the Meeting Notices.

In counts three through thirty-nine, the City alleges the Commission conducted improper closed sessions lacking reasonable meeting notice from October 28, 1999, through August 19, 2010. The City bases this claim on the fact the Commission posted its meeting notice on a bulletin board located in the hallway of the Commission's Postville office. The bulletin board is approximately thirty to forty feet from the main public access door. The bulletin board is not visible from the entrance door to the office. The office is open to the public Monday through Friday from 8:00 a.m. until 4:30 p.m. These facts are undisputed in this record.

A reasonableness standard applies to the notice requirements for government meetings. During the relevant time period, section 21.4(1) of IOMA provided: "A governmental body . . . shall give notice of the time, date, and place of each meeting and its tentative agenda, in a manner *reasonably calculated* to *apprise the public* of that information." Iowa Code § 21.4(1) (emphasis added). One statutorily prescribed method for providing reasonable notice is to

> post[] the notice on a bulletin board or other prominent place which is easily accessible to the public and clearly designated for that purpose at the principal office of the body holding the meeting, or if no such office exists, at the building in which the meeting is to be held.

---

[4]The court also dismissed the claim against the Commission in counts one and two. The City did not argue on appeal that the Commission can be found to violate the Open Meetings Act even though the members may have immunity. *See* Iowa Code § 21.6(3)(*b*) (recognizing that if the members of a governmental body are immune, damages, costs, and fees may be assessed against the governmental body). Thus, we will review the district court's dismissal of the Commission as to counts one and two.

Iowa Code § 21.4(1) (emphasis added); *see generally* Steve Stepanek, *The Logic of Experience: A Historical Study of the Iowa Meetings Law*, 60 Drake L. Rev. 497, 519 (2012).

These notice requirements are not mere formalities. Op. Iowa Att'y Gen. No. 81–7–4(L) (July 6, 1981), 1981 WL 178383, at *4. Chapter 21 is a critical mechanism for ensuring government transparency. *KCOB/KLVN, Inc. v. Jasper Cnty. Bd. of Supervisors*, 473 N.W.2d 171, 173 (Iowa 1991) (noting advance notice of the content of a public meeting is not the primary purpose of chapter 21). The goal of these laws is to ensure " 'the basis and rationale of governmental decisions . . . are easily accessible to the public' " in order to prevent councils of governments from becoming secret or star chambers. *Id.* (quoting Iowa Code § 21.1); *Dobrovolny v. Reinhardt*, 173 N.W.2d 837, 840–41 (Iowa 1970). Substantial compliance with the statute is all that is required. *KCOB/KLVN, Inc.*, 473 N.W.2d at 176.

The issue is whether the placement of the notice in the hallway is a "prominent place which is easily accessible to the public and clearly designated for that purpose at the principal office of the body holding the meeting" as a matter of law, or if a genuine issue of material fact exists as to whether placement of the notice substantially complied with the requirements of section 21.4(1). *See* Iowa Code § 21.4(1).

The secretary posted the notice on the board at least five days in advance of each meeting. However, the public generally does not utilize the hallway where the bulletin board is located, unless the individual has an appointment or uses the restroom.

Although, the Commission offered some germane evidence, it failed in its motion for summary judgment to establish there was no genuine issue of material fact the public had reasonable access to the bulletin

board. We do not know how often the public uses the hallway or if the board and its contents are visible from the reception area. Accordingly, the district court should have denied summary judgment on the notice issue because there is a genuine issue of material fact regarding the reasonableness of the notices.

The district court did not rule on the immunity issue regarding the meeting notice counts of the petition. We find the record is insufficient for us to rule on this issue. Moreover, even if the members of the Commission have immunity, there is a legal question as to whether that immunity extends to the Commission. *See* Iowa Code §§ 21.6(3)(*b*) (recognizing that if the members of a governmental body are immune, damages, costs, and fees may be assessed against the governmental body), 28H.4 (providing immunity to the members, not the council of governments). Therefore, we remand this issue to the district court for further proceedings consistent with this opinion.

**V. Publication in a Newspaper of General Circulation.**

Beginning in 2007, the Commission started publishing the names and salaries of its members in the *Oelwein Daily Register*. The *Register* is a daily newspaper with distribution in the Commission's five-county region and the ability to publish information within ten days. There are 1982 individual subscriptions to the *Register*—1529 for Fayette County, 46 for Clayton County, and 5 for Allamakee County. For business subscriptions, there are 319 for Fayette County but none for Allamakee, Clayton, Howard, or Winneshiek Counties. There are no individual or business subscriptions for either Winneshiek or Howard Counties.

To ensure accountability, councils of governments must annually publish the "names and gross salaries of persons regularly employed by the entity." Iowa Code § 28E.6(3)(*a*); s*ee* Iowa Code §§ 28H.5, 28E.1,

28E.6 (describing councils of governments); 2006 Iowa Acts ch. 1153, § 7 (adding the publication requirement in 2006 through "[a]n Act relating to government accountability"). Publication of this information must occur in "one newspaper of general circulation within the geographic area served by the joint board of the entity." Iowa Code § 28E.6(3)(*a*).

The City contends the *Register* is not a newspaper of general circulation. The district court found there is no genuine issue of material fact concerning whether the *Register* is a newspaper of general circulation. We agree and affirm the grant of summary judgment on this issue.

First, the statute only requires publication in one newspaper. *Id.* Thus, the legislature expressly stated it is not necessary to publish in multiple newspapers within a single geographic area. Moreover, it is not necessary to publish using a newspaper outside the geographic region.[5]

Second, we must analyze whether the *Register* is a newspaper of general circulation. *Id.* A "newspaper of general circulation" is a publication that "contains news and information of interest to the general public, rather than to a particular segment, *and that is available to the public within a certain geographic area.*" *Black's Law Dictionary* 1141 (emphasis added). The newspaper need only contain some news of general character and interest to the community, even though the newspaper may also be of particular interest to a specific class of individuals. *Burak v. Ditson*, 209 Iowa 926, 930, 229 N.W. 227, 228 (1930) (finding a newspaper specializing in legal news, but containing

---

[5]If a newspaper within the community refuses to publish the notice, then the publication can occur in a newspaper published "outside the district but which has general circulation within the district." Op. Iowa Att'y Gen. No. 88–12–3(L) (Dec. 9, 1988), 1989 WL 411501, at *2.

some general news, with subscribers of various occupations was a newspaper of general circulation). The City does not challenge the sufficiency of the *Register* based on its content.

The fighting issue is whether the newspaper is available "within the geographic area served by the joint board of the entity." Iowa Code § 28E.6(3)(*a*). This is a factual inquiry. Op. Iowa Att'y Gen. No. 88–12–3(L) (Dec. 9, 1988), 1989 WL 411501, at *1. When determining whether the newspaper has a sufficiently broad circulation within the region, the ultimate consideration is whether publication in that newspaper fulfills the purpose underlying this statute and other similar provisions—to give notice to the general public. *Id.*

We reject the City's challenges that a genuine issue of material fact exists as to the adequacy of the *Register* as a newspaper of general circulation based upon the breadth of its circulation. The City alleged the *Register* is not a newspaper of general circulation because it does not serve the entirety of the Commission's five-county area. However, the City does not contend a newspaper of general circulation must cover all five counties.

The undisputed record establishes there is no single newspaper available that has subscriptions in all five counties within the Commission's service region. However, the Commission specifically selected the *Register* to publish its meeting minutes, and subsequently, the annual report of the members' names and salaries, because it is the only daily newspaper serving the five-county area. Thus, the *Register* complies with the statute in serving the same area as the Commission. Iowa Code § 28E.6(3)(*a*).

The City seems to rely on the fact the *Register* is available for subscription in the Commission's five-county area, but no one

subscribes in certain counties within that region. Therefore, the City contends the *Register* fails to reach a diverse population within the Commission's five-county region because there are no individual subscriptions in either Winneshiek or Howard Counties. Moreover, there are no locations for the general public to purchase the *Register* in four of the counties served by the Commission—Allamakee, Clayton, Howard, and Winneshiek. This means Winneshiek County lacks any individual or business subscriptions.

This is essentially a numbers argument. A newspaper of general circulation is not determined by the number of its subscribers, but by its diversity. *Burak*, 209 Iowa at 930, 229 N.W. at 228; Op. Iowa Att'y Gen. No. 88–12–3(L) (Dec. 9, 1988), 1989 WL 411501, at *1. The numbers argument is not persuasive.

More compelling is the fact the *Register* serves the same area as the Commission. By having subscriptions in all but one county of the Commission's five-county region, the purpose of the publication requirement is fulfilled—individuals within the area served by the Commission have notice of the members' names and salaries.

We find there is no genuine issue of material fact on this issue. The *Register* has sufficiently diverse subscriptions within the area served by the Commission to qualify as a newspaper of general circulation under section 28E.6(3)(*a*). Accordingly, we affirm the district court's grant of summary judgment.

## VI. Conclusion.

We affirm the district court's grant of summary judgment as to counts one and two on the immunity issue as to the individual members' liability for damages because under this record, we find no genuine issue of material fact as to whether the members' actions involved intentional

misconduct or a knowing violation of the law. On the notice issue, we find a genuine issue of material fact exists as to whether placing the notices of meetings on the bulletin board in the hallway complied with IOMA under section 21.4(1). Therefore, we remand this issue to the district court for further proceedings. Finally, we affirm the district court's grant of summary judgment on the newspaper's status as one of general circulation in accordance with section 28E.6(3)(*a*). On remand, the district court shall determine if the City is entitled to any attorney fees and costs for this appeal and in any subsequent proceedings in the district court under IOMA pursuant to Iowa Code section 21.6(3)(*b*).

**DISTRICT COURT DECISION AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS.**