# IN THE SUPREME COURT OF IOWA

No. 18–2096

Filed November 15, 2019

**MARCUS NEWS, INC.,**

Appellant,

vs.

**O'BRIEN COUNTY BOARD OF SUPERVISORS,**

Appellee,

and

**IOWA INFORMATION, INC.**

Intervenor-Appellee.

---

Appeal from the Iowa District Court for O'Brien County, David A. Lester, Judge.

Plaintiff appeals decision of the district court affirming designation of two newspapers owned by intervenor as the official county newspapers for publication of official proceedings. **AFFIRMED.**

Ray H. Edgington and Colby M. Lessmann of Vriezelaar, Tigges, Edgington, Bottaro, Boden & Ross, LLP, Sioux City, for appellant.

Jeff W. Wright and Jacob B. Natwick of Whorley Heidman Law Firm, L.L.P., Sheldon, for intervenor-appellee.

Keith P. Duffy and Joseph A. Quinn of Nyemaster Goode, P.C., Des Moines, for amicus curiae Iowa Newspaper Association.

**APPEL, Justice.**

In this case, we consider the meaning of a statute governing the manner in which county boards of supervisors select official newspapers for publication of governmental notifications within counties with populations of less than 15,000 people. The central question in the case is how to determine whether newspapers under common ownership and published in the same city can be considered offered for sale or delivered "in the same geographic area" under Iowa Code section 349.6 (2017).

In this case, the O'Brien County Board of Supervisors (Board) determined that the *Sanborn Pioneer* and the *O'Brien County's Bell-Times-Courier*, two newspapers under common ownership and published in the same city, could not be combined for purposes of determining circulation because the publications were not offered for sale or delivered in the same geographic area. As a result of this determination, the newspapers were not selected as official newspapers for O'Brien County.

The disappointed publications appealed the decision of the Board to the district court. The district court affirmed, and the publications appealed. For the reasons expressed below, we affirm.

### I. Factual and Procedural Background.

**A. Legal Framework.** Under Iowa law, the board of supervisors in a county with less than 15,000 people is required to select two newspapers for official publications. *See* Iowa Code §§ 349.1, .3(1). Where more than two newspapers apply to be an official publication, the matter is deemed a contested matter and a hearing is held before the board of supervisors. *Id.* § 394.4.

Prior to the hearing, the applicants are required to submit to the county auditor sealed envelopes containing statements verified by the applicants. *Id.* § 349.5. A verified statement must show "the names of the

applicant's bona fide yearly subscribers living within the county and the place at which each such subscriber receives such newspaper, and the manner of its delivery." *Id.*

Once the affidavits are received, the board of supervisors holds its hearing. The statute requires the board of supervisors to select the two newspapers based on those with the largest number of bona fide yearly subscribers. *Id.* § 349.6. The board determines the bona fide yearly subscribers of a newspaper based upon those who receive the publication by mail or otherwise, who have been subscribers "at least six consecutive months prior to the date of application." *Id.* § 349.7(1). Similarly, for publications regularly delivered by carriers, subscribers are considered bona fide yearly subscribers if the publication has been delivered "at least six consecutive months before the date of application." *Id.* § 349.7(2). Finally, when newspapers are purchased for resale by independent publishers, the subscribers are determined from the independent publishers list of their subscribers. *Id.*

Under Iowa Code section 349.6, newspapers under common ownership and published in the same city are permitted to be combined for purposes of determining circulation under two circumstances. First, such newspapers may be combined when the publications have "approximately the same subscriber list." *Id.* In the alternative, however, such newspapers may be combined for purposes of calculating bona fide yearly subscribers when "offered for sale in or delivered to the same geographic area." *Id.*

After the board makes its official selection, an applicant may, within twenty days, appeal the decision of the board to the district court. *Id.* § 349.11. The auditor is directed to "file with the clerk of the district court a transcript of all the proceedings before the board [of supervisors],

together with all papers filed in connection with [the] matter." *Id.* § 349.12. The appeal is triable de novo as an equitable proceeding without formal pleading after twenty days following the filing of the transcript. *Id.* § 349.13.

**B. Proceedings Before the Board.** Marcus News, Inc. (Marcus News) publishes two newspapers, the *Sanborn Pioneer* and the *O'Brien County's Bell-Times-Courier*, in Paullina, Iowa. Similarly, Iowa Information, Inc. (Iowa Information) publishes two newspapers, the *N'West Iowa REVIEW* and the *Sheldon Mail-Sun*, in Sheldon, Iowa. All four publications meet the requirements for official publications under Iowa Code section 618.3.

Marcus News and Iowa Information both submitted applications to the Board requesting that their newspapers be selected as official county publications. Marcus News submitted its two newspapers for consideration as one newspaper under Iowa Code section 349.6. Iowa Information submitted separate applications for each of their above-listed newspapers.

On January 7, 2018, Marcus News submitted a combined verified statement regarding the *Sanborn Pioneer* and the *O'Brien County Bell-Times-Courier*. *Id.* § 349.5. The following day, Iowa Information submitted a verified statement regarding the *N'West Iowa REVIEW* and the *Sheldon Mail-Sun*. The statements revealed the following circulation numbers:

| Publication | Circulation |
| --- | --- |
| N'West Iowa REVIEW | 1,146 |
| Sheldon Mail Sun | 784 |
| O'Brien County's Bell-Times/ Sanborn Pioneer combined | 814 |

On January 9, the Board held a hearing concerning the applications. After hearing testimony on behalf of both publishers, the Board first

awarded the right to legal publication to *N'West Iowa REVIEW* as the largest newspaper among the applicants.

The Board next considered whether the newspapers of Marcus News, the *O'Brien County Bell-Times-Courier* and the *Sanborn Pioneer,* should be considered as one newspaper. The Board concluded that the two newspapers should not be combined "pursuant to Iowa Code 349.6 as they are not delivered to the same geographic area and when applying the split of their subscribers . . . they do not exceed the 784 subscribers of the Sheldon Mail-Sun." As a result, the Board awarded its second right-to-legal publication to the *Sheldon Mail-Sun.*

**C. Proceedings Before the District Court.** Marcus News timely appealed the decision of the Board to the district court, and Iowa Information intervened. The parties presented to the district court a joint stipulation of facts with nine attached exhibits. Marcus News raised two issues before the district court. First, Marcus News argued that its two newspapers should be treated as one newspaper under Iowa Code section 349.6. Further, Marcus News argued that a considerable number of the subscribers listed on Iowa Information's verified statement submitted to the Board did not meet the statutory requirement of yearly subscribers but instead included subscribers with subscriptions for less than one year. *See id.* § 349.5.

Iowa Information argued that each of the newspapers published by both Marcus News and Iowa Information should be considered separately. With respect to the yearly subscriber issue, Iowa Information asserted that

> the durations on [the verified statement] merely show the length of a subscriber's renewal term. All subscribers in question were subscribers immediately before their renewal term . . . began and all renewed their subscriptions for an additional six months.

Marcus news responded that these alleged facts were not included in the joint stipulation of facts and that they should not be considered by the court.

The district court entered its ruling and order on October 10, 2018. The district court affirmed the decision of the Board to consider the *Sanborn Pioneer* and the *O'Brien County Bell-Times-Courier* as separate newspapers under Iowa Code section 349.6. Additionally, the district court affirmed the Board's designation of the *N'West Iowa REVIEW* and the *Sheldon Mail-Sun* as the official newspapers for O'Brien County.

On October 24, Marcus News filed a motion to reconsider. Marcus News asserted that the district court failed to provide proper guidance to the term "same geographic area," failed to give proper consideration to the area in which the Marcus News' publications circulated, failed to properly identify the single area in which Iowa Information's publications were circulated, failed to consider the legislative intent for the relevant statutes, and failed to address the fact that the subscriber lists provided by Iowa Information did not consist wholly of bona fide yearly subscribers.

On November 28, the district court denied the motion for reconsideration. The district court rejected all the issues raised on the merits except the question of whether the subscriber lists of Iowa Information complied with the Iowa Code requirements for verified lists. According to the district court, the argument was not properly raised at the time of trial and thus would not be considered further.

Marcus News filed a timely appeal.

**II.  Standard of Review.**

Under Iowa Code section 349.13, the appeal is "triable de novo as an equitable action without formal proceedings." As an appeal of an equitable proceeding, our review is de novo. *State ex rel. Miller v. Vertrue,*

*Inc.*, 834 N.W.2d 12, 20 (Iowa 2013); *Sille v. Shaffer*, 297 N.W.2d 379, 381 (Iowa 1980).

**III. Discussion.**

**A. Proper Interpretation of "Offered for Sale in or Delivered to the Same Geographic Area."**

1. *Introduction.* The first question raised in this appeal is the meaning of the phrase "offered for sale in or delivered to the same geographic area" in Iowa Code section 349.6. This provision was added to Iowa Code chapter 349 in 1986. *See* 1986 Iowa Acts ch. 1013, §§ 1–2 (codified at Iowa Code § 349.6 (1987)). Although there have been no appellate court decision under this particular section, this court generally described the purpose of chapter 349 as "to secure as large a general circulation of the official publications of the county among its citizens as is practicable." *Albia Publ'g Co. v. Klobnak*, 434 N.W.2d 636, 638 (Iowa 1989) (quoting *Ashton v. Story*, 96 Iowa 197, 201, 64 N.W. 804, 805 (1895)).[1]

2. *Positions of the parties.* First, Marcus News claims the district court erred in affirming the Board's decision not to combine the *Sanborn Pioneer* and the *O'Brien County's Bell-Times-Courier* as one publication being "offered for sale or delivered to the same geographic area." According to Marcus News, the entire county of O'Brien should be considered as the

---

[1]*Albia* was decided near the adoption of the new language in Iowa Code section 349.6 and included the following footnote:

> We recognize that the Iowa legislature has recently amended chapter 349 to provide that in case of a contest under section 349.6, "newspapers under common ownership published in the same city, and having approximately the same subscriber list . . . shall be treated as one newspaper." 86 Iowa Acts ch. 1013, § 1. Thus our rule would apply only where no contest exists, as in the case before us.

*Albia Publ'g Co.*, 434 N.W.2d at 639 n.1.

geographic area in question for the purposes of Iowa Code section 349.6. Marcus News argues that for other purposes, geographic areas typically have been analyzed in terms of specific areas with established boundaries. *Cf. City of Postville v. Upper Explorerland Reg'l Planning Comm'n*, 834 N.W.2d 1, 11 (Iowa 2013) (finding publication having subscriptions in all but one county of the five-county region met statutory requirement of publication within the geographic area served by the board). In the alternative, Marcus News claims its papers circulated primarily in a geographic area west of Highway 59 in O'Brien County, rejecting the district court's north–south delineation in favor of an east–west delineation of their own creation.

Second, Marcus News argues that the district court erred in declining to combine Iowa Information's publications, the *N'West Iowa REVIEW* and the *Sheldon Mail-Sun.* Marcus News notes that forty-two percent of the subscribers of the *N'West Iowa REVIEW* resided in the City of Sheldon, while eighty-seven percent of the subscribers of the *Sheldon Mail-Sun* lived in the City of Sheldon. Marcus News argues that these two newspapers thus should be treated as published for the same geographic area and, as a result, should be combined and treated as one publication.

3. *Discussion.* We begin by considering whether the two publications of Marcus News should have been considered as one publication under Iowa Code section 349.6. The parties agree that the key question is whether the *Sanborn Pioneer* and the *O'Brien County's Bell-Times-Courier* serve the same geographic area, since their combination would allow either the highest circulated Marcus News publication, or in the alternative the combined Marcus News publications, the default second official newspaper of O'Brien County.

Exhibits 1 and 2 submitted by the parties in the district court reveal that ninety-four percent of the subscribers to the *Sanborn Pioneer* are located in the northern part of O'Brien County and ninety-two percent of the subscribers to the *O'Brien County's Bell-Times-Courier* are located in the southern part of O'Brien County. The location of subscribers strongly suggest that these two papers serve different geographic areas.

We do not agree, as suggested by Marcus News, that the entirety of O'Brien County is the relevant geographic area. It may be possible, as a matter of fact, that two publications could be undifferentiated, homogenous publications with subscribers equally distributed across the county. That is clearly not the case here. The subscribers to the *Sanborn Pioneer* and the *O'Brien County's Bell-Times-Courier* are not equally distributed throughout O'Brien County. The subscriber lists demonstrate they serve different geographic areas.

A second approach is to suggest the term "same geographic area" in Iowa Code section 349.6 requires, as a matter of law, a countywide analysis regardless of the distribution of subscribers within the county. Such an approach is certainly plausible in the abstract. But if the legislature intended that result, it would have said so. It would have been easy for the legislature to state simply that two newspapers, in order to be combined, need only have subscribers in the same county. That is not what the legislature did. Instead, in order to be combined (at least when the subscribers are not approximately the same), Iowa Code section 349.6 provides that the publications must serve the "same geographic area."

We recognize that Marcus News advances policy arguments suggesting that its approach to the statute might provide more or better notice of official actions to the citizens of O'Brien County than the approach adopted by the district court. The legislature, however, has

chosen to impose a same-geographic-area requirement for combining publications. We see no basis to write this requirement out of the statute.

We now turn to the second question posed by Marcus News: namely, whether the Board should have combined the two publications of Iowa Information, the *N'West Iowa REVIEW* and the *Sheldon Mail-Sun,* for purposes of Iowa Code section 349.6. The record reveals that eighty-seven percent of the subscribers of the *Sheldon Mail-Sun* are located in the City of Sheldon, while with respect to the multicounty *N'West Iowa REVIEW,* fifty-eight percent are located outside of the City of Sheldon. While the term "same geographic area" does not require exact or total overlap of subscribers, it does require such a great overlap that the two publications should be considered as one. Here, the *N'West Iowa REVIEW* has a majority of subscribers outside of the City of Sheldon while the vast majority of the *Sheldon Mail-Sun* are within the City of Sheldon. Because of this substantial difference, we do not believe the two publications should be combined and considered as one publication in the same geographic area.

### B. Yearly Subscriber Issue.

1. *Introduction.* The record in this case includes three verified statements (affidavits) that the parties filed with the county auditor pursuant to Iowa Code section 349.5.[2] The publisher of the *Sanborn Pioneer* and the *O'Brien County's Bell-Times-Courier* filed an affidavit combining the subscribers of both publications. The publisher of the *Sheldon Mail-Sun* and the *N'West Iowa REVIEW* submitted separate affidavits. In each affidavit, the publisher swore that an attached list of

---

[2]Although not attached to the parties' stipulation of facts, the affidavits were filed with the district court, discussed by the parties at the hearing before the district court, and included in the appendix in this appeal.

subscribers "lists the names of the bona fide yearly subscribers living within O'Brien County, Iowa," as required by Iowa Code section 349.5. Further, the publishers swore that "these subscribers have been subscribers to this same newspaper for at least six months prior to the date of this application and that they otherwise meet the requirement of [Iowa Code] Section 349.5 defining bona fide yearly subscribers."

Two additional exhibits were presented to the district court. Exhibit 8 was a listing provided by Marcus News of subscribers identified in the affidavit it submitted to the Board with details regarding each subscription. All of the subscriptions in exhibit 8 had a duration of twelve months as that is the only subscription period offered by Marcus News' publications.

Exhibit 9 was a listing of subscribers identified by Iowa Information in their affidavit submitted to the Board. Unlike the subscribers in exhibit 8, some of the subscriptions in exhibit 9 are for less than one year.

Under Iowa Code section 349.7, the board of supervisors is to determine bona fide yearly subscribers of a newspaper within the county. For publications delivered "by mail or otherwise," a person who has been a subscriber "at least six consecutive months prior to date of application" is considered a "yearly subscriber" under the statute. Iowa Code § 349.7(1). The statute provides similar language with respect to carrier subscriptions or papers purchased for resale and delivery by independent carriers who have filed with the publisher a list of its subscribers. *Id.* § 349.7(2).

2. *Positions of the parties.* Marcus News emphasizes that the subscriber list it provided to the Board contained only "yearly subscribers, all of whom were subscribers for at least six consecutive months prior to the date of the application [to] the Board as required under [Iowa Code]

§§ 349.6 and 349.7." In contrast, Marcus News argues that the subscriber list of Iowa Information contained "a considerable number of subscribers . . . who were not yearly subscribers for at least six consecutive months prior to the date of the application to the Board as required under [Iowa Code] §§ 349.6 and 349.7." Specifically, Marcus News identified twenty-eight subscribers of the *Sheldon Mail-Sun* and thirty-seven subscribers of the *N'West Iowa REVIEW* that had less than one-year subscriptions for a combined total of sixty-five subscribers. As a result, Marcus News asserted that a total of sixty-five subscribers did not qualify under the statute. Marcus News uses this analysis as a springboard to question the credibility of the numbers submitted by Iowa Information generally. According to Marcus News,

> there could be other questions about [Iowa Information's] list if it were looked at more closely, and those questions would be possibly prompted by the fact that it really hasn't provided a truthful representation of the nature of its subscriptions.

In reply, Iowa Information asserts that the term of renewal is not the same as length of subscription. Although some of the renewal terms were for periods of time shorter than a year, the shorter renewal term did not establish that the subscribers had not been subscribers for at least six months through multiple renewals. As a result, the few cases involving shorter renewal periods does not undermine the affidavits filed by Iowa Information listing the number of subscribers who had received the paper for a six-month period. Further, Iowa Information stated that even if the sixty-five contested subscribers identified by Marcus News were removed from the subscription lists, the outcome of the case would not be affected, as the lowest circulating newspaper published by Iowa Information would still exceed the highest circulating newspaper published by Marcus News.

3. *Discussion.* The district court held that the yearly subscription issue was not raised before the district court and denied a motion for reconsideration on the issue. Yet, the transcript of the hearing before the district court shows that Marcus News raised the issue in its trial brief, in oral arguments, and again in its motion for reconsideration. There is, however, still a question of whether the district court had jurisdiction to hear the yearly subscription issue.

In *Ashton*, the court noted under a precursor statute that when fraud is charged, it should be alleged before the hearing is had and the selection of papers made. 96 Iowa at 198, 64 N.W. at 804. The *Ashton* court emphasized that the jurisdiction of the district court is appellate and that it should try and decide the case made before the board of supervisors. *Id.* The minutes and the transcript of the hearing before the Board in the case at hand make no mention of a challenge to the number of yearly subscribers claimed by Iowa Information publications.

However, in *Dunham v. Clayton County*, the court of appeals held that while *Ashton* may have been good law at the time it was decided, the relevant Code section has been amended to provide for appeals to be "triable de novo as an equitable action." 470 N.W.2d 362, 366 (Iowa Ct. App. 1991) (quoting Iowa Code § 349.13 (1985)). The court of appeals concluded that "trial de novo" in the amended statute was more expansive than "review de novo" and permitted new evidence and new theories to be presented to the district court. *Id.* at 366–67 (quoting *Sieg v. Civil Serv. Comm'n*, 342 N.W.2d 824, 828 (Iowa 1983)). In this case, the trial court and the parties adopted an expansive view of the proceedings, with the parties engaging in discovery and presenting the district court with additional exhibits beyond the record developed before the Board. We adhere to the interpretation of trial de novo adopted by the court of appeals

in *Dunham* as the correct view of the current statute. *See Dolan v. Civil Serv. Comm'n,* 634 N.W.2d 657, 662–63 (Iowa 2001).

Turning to the merits of the yearly subscriber issue, however, we conclude that Marcus News is not entitled to relief based upon this claim. It may be true that some of the renewal terms of subscribers were relatively short, but short renewal terms do not mean that the listed subscribers were not subscribers who received the publications for at least six consecutive months as stated by Iowa Information in the affidavits filed with the county auditor. The challenge of Marcus News to sixty-five Iowa Information subscribers, even if upheld, would not be sufficient to alter the result here, as the largest Marcus News publication would still have fewer subscribers than the smallest Iowa Information paper. As a result, we find that Marcus News is not entitled to relief on this ground.

**IV. Conclusion.**

For the above reasons, the judgment of the district court is affirmed.

**AFFIRMED.**